IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Charles E. Richardson,                          :
                        Plaintiff              :   Civil Action 2:12-cv-00673

        v.                                      :   Judge Watson

Carolyn W. Colvin,                              :   Magistrate Judge Abel
Commissioner of Social Security,
                        Defendant              :


**REPORT AND RECOMMENDATION**

Plaintiff Charles E. Richardson brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying his

application for Disability Insurance Benefits and Supplemental Security Income benefits.

This matter is before the  Magistrate Judge for a report and recommendation on the parties'

cross-motions for summary judgment.

**Summary of Issues.** On June 9, 2007, plaintiff was injured in a severe motor vehicle

accident. Plaintiff alleges disability due to cervical stenosis; cervical degenerative joint

disease; right C5 radiculopathy and suspected left C5 radiculopathy; and post-traumatic

stress disorder with anger. The administrative law judge determined that plaintiff retained

the residual functional capacity to perform a significant range of light work.

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The administrative law judge erred in finding that plaintiff did not meet
  Listing 1.04;
- The administrative law judge failed to have a medical expert at the hearing
  and improperly used his own lay opinion;

- The administrative law judge failed to properly evaluate the plaintiff's treatment under Social Security Ruling 82-59; and
- The administrative law judge failed to properly assign weight to the opinion of the treating physician.

**Procedural History.**  Plaintiff Charles E. Richardson filed his application for disability insurance benefits on June 29, 2010, alleging that he became disabled on January 7, 2008, at age 49, by arthritis in his neck and right shoulder, left knee problems, pinched nerves in his neck, shakes, high blood pressure, high cholesterol, colon problems, and depression.  (R. 134, 244.)  The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge.  On August 1, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 26.)  A vocational expert also testified.  On August 18, 2011, the administrative law judge issued a decision finding that Richardson was not disabled within the meaning of the Act.  (R. 21.)  On June 26, 2012, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1-3.)

**Age, Education, and Work Experience.**  Charles E. Richardson was born December 9, 1958   (R. 134.) He has a high school education and completed 4 years of college. He has a security/law enforcement degree.  (R. 244.) He has worked in a restaurant busing tables, performed light industrial work for temporary services, and performed shipping, receiving and assembly work in a warehouse.  He last worked July 2009.  (R. 246.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized

2

Richardson's testimony as follows:

> The claimant is a 52-year-old man who lives in constant pain in
> his neck and his arms. He testified that he is in excruciating
> pain, every day. He said the pain starts in his "fourth, fifth and
> six vertebrae." He said it feels like a numbing cold in his hand,
> arms and shoulders bilaterally. He testified that he has had this
> pain for more than five years. He said he frequently drops
> things because his hands are unstable and he cannot grip
> objects. He said he gets the "shakes" when he holds an object
> like a razor, fork, or pencil. Further, the claimant testified that
> his medication affects his concentration and focus. Finally, the
> claimant testified that he struggles to keep employment because
> he is prone to angry outbursts. The claimant testified that the
> combination of his physical and mental impairments renders
> him incapable of engaging in work related activities on a
> sustained basis at competitive levels.

(R. 16.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize the evidence related to plaintiff's cervical impairment.

On June 9, 2007, plaintiff was brought to the emergency room following a motor vehicle accident. (R. 451-52.)

Veteran's Administration Medical Clinic. An August 28, 2009 x-ray report revealed that plaintiff's right humerus was intact with normal density. The adjacent soft tissues were unremarkable. (R. 582.)

November 4, 2009 x-rays of the cervical spine showed multilevel degenerative disc disease with "mild to moderate uncovertebral disease" at C5-C6 and C6-C7. There were

3

large osteophytes/ sclerosis and disc space narrowing at C4-C7. The impression was "[m]arked multilevel degenerative disc and joint disease." (R. 680.)

A November 13, 2009 EMG showed right C5 radiculopathy with right biceps weakness and atrophy. (R. 615.)

On November 9, 2009, Mark Tranovich, M.D., performed an orthopedic consultation. Plaintiff complained of right shoulder weakness that began about a year ago. He had pain with use. He could function fairly well below the horizontal. Any attempts to lift the arm revealed weakness, and he had pain with the attempts. He rated the pain as a 3 on a 10 point scale. He had some atrophy in the upper extremity.

On physical examination, plaintiff had some obvious asymmetry. The right arm had atrophied compared to the left. There was some asymmetry in the scapular region that was more pronounced with motion in the upper extremities. Palpation revealed diffuse tenderness in the AC joint area. There was no posterior tenderness. He had weakness in the biceps and the brachialis on the right side and limited power with resistive flexion. He denied any current paresthesias. Reflexes of the biceps, triceps, and brachioradials appeared 1+ and symmetric. (R. 677- 78.)

A December 14, 2009 EMG showed right C5 radiculopathy. (R. 586.) Plaintiff was seen by an occupational therapist who noted findings from imaging reports that indicated marked multilevel degenerative disc and joint disease and moderate degenerative changes in the right shoulder AC joint. (R.660.)

A January 11, 2010 MRI showed degenerative disc space narrowing at C4-C5, C5-C6, C6-C7 and foraminal narrowing bilaterally involving the C5, C6, and C6-C7 roots. A small midline disc bulge was present at C3-4. (R. 678-79.)

On March 2, 2010, plaintiff did not attend a scheduled appointment with his primary care physician. (R. 645.) On March 12, 2010, plaintiff reported that he was doing well. (R. 640.) On April 14, 2010, Richardson did not attend a scheduled orthopedic appointment. (R. 639.)

On May 26, 2010, plaintiff complained of severe neck pain and upper extremity weakness. Dr. Edwin Season diagnosed right C5 radiculopathy. Dr. Season noted that plaintiff was probably a candidate for cervical spine surgery, but he would like to proceed with epidural steroid injections first. (R. 423-24.)

On May 26, 2010, Dr. Season completed a "Certification of Disability."  The form stated, "[a] person shall be considered to have a disability if such person has a physical, mental or emotional impairment which is expected to be of long-continued and indefinite duration; substantially impedes his or her ability to live independently; and is of such a nature that such ability could be improved by more suitable housing conditions." (R. 575.) Other than signing the form indicating that plaintiff was disabled, the form contains no further explanation.

On June 1, 2010, Dr. Mehr Siddiqui examined plaintiff for tremors. Plaintiff reported that he had been a heavy drinker up until the past six months. Since he stopped drinking, he noticed the tremors. Dr. Siddiqui diagnosed essential tremors. (R. 420-22.)

On July 7, 2010, plaintiff was seen for a physical medicine rehabilitation consulta-tion. Plaintiff had sharp neck pain and progressive right arm weakness. He began exper-iencing left arm weakness. He had intermittent numbness and tingling greater on the right. His MRI revealed cervical degenerative joint disease and stenosis. His EMG showed right deltoid and right biceps fibrillations. He had been referred to the pain clinic for epidural steroid injections before considering surgery. On physical examination, there was atrophy of the right biceps and deltoid. His right arm had decreased sensation to light touch. His left arm had normal sensation. Dr. Guffrey was unable to elicit reflexes in the biceps or brachioradialis reflexes bilaterally. Plaintiff had full range of motion for shoulder, elbow, wrists, and neck. Dr. Guffrey diagnosed cervical stenosis, cervical degenerative joint disease, right C5 radiculopathy and suspected left C5 radiculopathy. Dr. Guffrey recom-mended heavy intermittent cervical traction and physical therapy. (R. 396-97.)

On July 20, 2010, Dr. Season indicated that plaintiff might be a candidate for surgery, but Richardson wanted to hold off on surgery. Plaintiff would continue with conservative care and was being considered for epidural injections. (R. 887-88.)

On August 24, 2010, plaintiff was issued a TENS unit. (R. 746-47.)

On September 21, 2010, plaintiff's physical therapist asked the orthopedist to refer Richardson to a home cervical traction unit consultation. (R. 851.)

On December 31, 2010, plaintiff was seen by an occupational therapist, Rachel A. Wehrkamp. Ms. Wehrkramp concluded that occupational therapy was not appropriate for

plaintiff because of the cervical basis of his impairment, overall muscle atrophy, and weakness in his right upper extremity. (R. 661-62.)

On January 5, 2011, at physical therapy, Richardson demonstrated bilateral extremity strength deficits at the shoulder, elbow, wrist and hand. He had numbness throughout the neck and bilateral upper extremities. (R. 965.) On manual muscle testing of his upper extremities, his right was rated the same as or better than the left, with both side scoring 4 or 4+ out 5. (R. 965.) On January 18, 24 and 31, plaintiff failed to attend physical medicine and rehabilitation appointments. (R. 946, 950-51, 960 and 957.)

On February 2, 2011, plaintiff was seen by a neurologist for follow up for his essential tremors. Richardson reported continued problems when he attempted to write. (R. 947-48.)

On June 27, 2011, Richardson met with a nurse practitioner to discuss his concerns and fears about neck surgery. He was concerned about possible damage to his vocal chords, loss of his left arm, and paralysis. He was encouraged to speak with his doctor about his fears. (R. 896.)

Benita M. Jackson-Smoot, M.D. On July 16, 2010, Dr. Jackson-Smoot, a State agency physician, completed a physical residual functional capacity assessment. Dr. Jackson-Smoot opined that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. He could stand and/or walk about 6 hours in an 8-hour day. He could sit about 6 hours in an 8-hour day. His ability to push and/or pull was limited in his upper extremities. Plaintiff had shoulder weakness, limited power resistive flexion, and

atrophy of the right upper extremity. Richardson was limited to only occasionally over-head reach on the right. He could frequently reach overhead on the left. The use of foot pedals was limited to occasional on right due to past knee surgery. Plaintiff could occasionally climb ramps or stairs. He could never balance. (R. 689-96.)

On November 24, 2010, David Brock, D.O., reviewed the evidence of record and affirmed the July 16, 2010 assessment. Dr. Brock noted that plaintiff had not pursued using a TENS unit and was not considering surgery. He did not pursue epidural injections and was reluctant to try Gabapentin. Dr. Brock concluded that Richardson's statements regarding pain and weakness were generally supported by the longitudinal objective findings and were credible. (R. 803.)

**Administrative Law Judge's Findings.**

1.     The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2.     The claimant has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.     The claimant has the following severe impairments: degenerative disc disease of the cervical spine, degenerative joint disease of the right shoulder, radiculopathy, high blood pressure, status post left knee surgery to repair torn cartilage, hand tremors, adjustment disorder and alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d). 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a significant range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and/or carry and push and/or pull a maximum of 20 pounds occasionally and 10 pounds frequently; sit for four hours at a time and a total of eight hours during an eight hour work day; and walk and/or stand for up to two hours at a time and a total of six hours during an eight hour work day. The claimant is precluded from climbing ropes/ladders/scaffolds, but could occasionally climb ramps/stairs. The claimant can perform occasional balancing, stooping, kneeling, crouching and crawling. The claimant can perform no more than occasional overhead reaching with the right upper extremity. He is limited to no more than frequent use of foot pedals with the left lower extremity and no more than occasional use of foot pedals with the right lower extremity. Mentally, the claimant is limited to simple to moderately complex tasks.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on December 9, 1958 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant and subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

9

(R. 13-21.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred in finding that plaintiff did not meet Listing 1.04. Plaintiff maintains that he meets Listing 1.04A. The record contains evidence of nerve root compression in the reports of his MRIs, x-rays and EMG. Plaintiff has documented atrophy of the muscles and a positive EMG showing radiculopathy, muscle weakness with documented strength

deficits, the inability to elicit biceps and brachiorandialis reflexes bilaterally, and essential tremors. (R. 393, 397, 712, 717, 779, 793, 944, 965). His allegations of pain and weakness in his upper extremities are supported by the medical record. The administrative law judge erred by analyzing plaintiff's impairment under Listing 1.04C, which requires an inability to ambulate effectively. Plaintiff's impairment concerns his cervical spine, and the administrative law judge's analysis was improper.

- <u>The administrative law judge failed to have a medical expert at the hearing and improperly used his own lay opinion</u>. Plaintiff argues that the administrative law judge failed to adequately develop the record and improperly minimized the medical findings in the record. When an administrative law judge makes determinations about the usual dosage and effects of medications or other forms of therapy, resolves evidentiary conflicts in the record, or assess the significance of clinical or laboratory findings, he must obtain medical expert opinion rather than attempt to evaluate or interpret medical data on his own. The administrative law judge also improperly discounted plaintiff's allegations concerning the severity of his cervical spine condition. The administrative law judge does not have the ability to determine that a plaintiff does not equal a Listing without the testimony of a medical expert.

- <u>The administrative law judge failed to properly evaluate the plaintiff's treatment under Social Security Ruling 82-59.</u> The administrative law judge

incorrectly surmised that plaintiff is not disabled because he has not under-gone surgery. Plaintiff argues that under SSR 82-59, the administrative law judge can only determine that an individual has failed to follow prescribed treatment where the record demonstrates that there has been a refusal to follow prescribed treatment. Here, plaintiff has taken appropriate measures to attempt to control his pain. Plaintiff also maintains that fear is a justifiable cause for failure to follow prescribed treatment. Plaintiff was informed that surgery had a 50% chance of being successful. Surgery made plaintiff nervous and he was afraid of becoming paralyzed. Plaintiff has completed extensive physical therapy, used a traction device, taken multiple medications, and used a TENs unit.

- The administrative law judge failed to properly assign weight to the opinion of the treating physician. Plaintiff maintains that the administrative law judge failed to give adequate consideration to Dr. Edwin H. Season, his treating orthopedic surgeon. Plaintiff argues that the administrative law judge failed to give any reasons for rejecting Dr. Season's opinion.

**Analysis.**

Listing 1.04. The administrative law judge concluded that plaintiff did not meet Listing 1.04 because the medical evidence did not establish nerve root compression, spinal arachnoiditis or lumbar spinal stenosis. The administrative law judge further found:

> The listing also requires involvement of one major peripheral joint resulting in inability to perform fine and gross movements effectively as defined in1.00B2c and/or inability to ambulate effectively as defined in 1.00B2b. In this case the evidence does not demonstrate that the claimant has the degree of difficulty in performing fine and gross movements as defined in 1.00B2c or the degree of difficulty in ambulating as defined in 1.00B2b.

(R. 14.) Plaintiff argues that all a claimant has to prove is that he has a spinal disorder resulting form a compromise of the nerve root with neuor-anatomic distribution of pain, limitation of motion of the spine, and motor loss accompanied by sensory or reflex loss. 29 CFR Pt. 404 Subpt. P, Appx. 1, 1.04. To meet Listing 1.04A, plaintiff argues that he does not have to prove an inability to ambulate effectively or a sustained inability to perform fine and gross manipulation on a sustained basis.

Listing 1.04 states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or

13

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 CFR Pt. 404, Subpt. P, App. 1.

In addressing whether plaintiff Richardson's cervical impairments met or equaled Listing 1.04, the administrative law judge found that "[t]he medical evidence does not establish the requisite evidence of nerve root compression . . . as required under listing 1.04." (R. 14.) However, the Commissioner concedes in her brief that there is evidence of nerve root compression. February 1, 2013 Memorandum in Opposition, p. 8, Doc. 15, PageID 1059. The Commissioner goes on to argue that a claimant must also have an inability to ambulate effectively on a sustained basis or an inability to perform fine and gross movements effectively on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 1.00(B)(2)(a). *Audler v. Astrue,* 501 F.3d 446, 449 (5th Cir. 2007). The Commissioner maintains that because the administrative law judge's further findings that "there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b)" and that "the evidence does not demonstrate that the claimant has the degree of difficulty in performing fine and gross movements as defined in 1.00B2c . . .." (R. 14) are supported by substantial evidence, the administrative law judge did not err in finding that plaintiff did not meet or equal Listing 1.04C.

The question for decision is whether there is a requirement beyond those set out in Listing 1.04, that disorders of the musculoskeletal system involve a loss of function. See, § 1.00B. The regulations define loss of function:

14

Regardless of the cause(s) of a musculoskeletal impairment, *functional loss for purposes of these listings is defined as the inability to ambulate effectively* on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, *or the inability to perform fine and gross movements effectively* on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment. The inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months. For the purposes of these criteria, consideration of the ability to perform these activities must be from a physical standpoint alone. . . .We will determine whether an individual can ambulate effectively or can perform fine and gross movements effectively based on the medical and other evidence in the case record, generally without developing additional evidence about the individual's ability to perform the specific activities listed as examples in 1.00B2b(2) and 1.00B2c.

20 CFR Pt. 404, Subpt. P, App. § 1.00(B)(2)(a)(emphasis added). The regulations further

state:

What we mean by inability to perform fine and gross movements effectively. Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 CFR Pt. 404, Subpt. P, App. § 1.00(B)(2)(c). Listings 1.02, 1.03, and 1.06 expressly require

either an inability to ambulate effectively on a sustained basis or an inability to perform

fine and gross motor movements effectively on a sustained basis. Although the Fifth

Circuit held in *Audler*, 501 F.3d at 448-49 that a claimant must demonstrate functional loss

as described in § 1.00(B)(2) to meet or equal Listing 1.04A, there is contrary authority in the

15

Southern District of Ohio. See *Irvine v. Commissioner of Social Sec.*, No. 1;12-cv-837, 2013 WL 3353888 at *10, n. 8 (S.D. Oh. Jul. 3, 2013). For the purposes of this Report and Recommendation, it is not necessary to decide whether a claimant must demonstrate functional loss to meet or equal Listing 1.04A.

The record does not contain any medical opinions concerning whether plaintiff meets or equals any Listing. Neither Dr. Jackson-Smoot or Dr. Brock state an opinion about whether plaintiff's cervical impairment met or equaled any Listing. Given the medical evidence of nerve root compression, muscle atrophy, and sensory or reflex loss, the administrative law judge was not in a position to make his own medical evaluation of whether plaintiff met or equaled Listing 1.04A. There is also conflicting evidence about whether plaintiff's cervical impairment meets or equals Listing 1.04A. The issue is whether there is substantial evidence of "limitation of motion of the spine." At least two examining doctors reported that plaintiff had a full range of motion in the neck and shoulders. (R. 396-97 and 889.) For these reasons, I recommend that this case be REMANDED. On remand, the administrative law judge should have a medical expert assist in evaluating Listing 1.04A.

Failure to Obtain Medical Expert. The primary function of a medical expert is to explain medical terms and the findings in medical reports in more complex cases in terms that the administrative law judge, a who is not a medical professional, may understand. *See, Richardson v. Perales*, 402 U.S. 389, 408 (1972). The Commissioner's regulations provide that an administrative law judge "may also ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the]

16

impairment(s) equals the requirements of any impairment listed in appendix 1 to this sub-part." 20 C.F.R. § 404,1527(f)(2)(iii). The Commissioner's operations manual indicates that it is within the administrative law judge's discretion whether to seek the assistance of a medical expert. HALLEX I-2-5-32 (September 28, 2005). "The primary reason an ALJ may obtain ME opinion is to gain information which will help him or her evaluate the medical evidence in a case, and determine whether the claimant is disabled or blind." *Id.* The operations manual indicates that an administrative law judge "may need to obtain an ME's opinion" in the following circumstances:

- the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s);
- the ALJ is determining the usual dosage and effect of drugs and other forms of therapy;
- the ALJ is assessing a claimant's failure to follow prescribed treatment;
- the ALJ is determining the degree of severity of a claimant's physical or mental impairment;
- the ALJ has reasonable doubt about the adequacy of the medical record in a case, and believes that an ME may be able to suggest additional relevant evidence;
- the medical evidence is conflicting or confusing, and the ALJ believes an ME may be able to clarify and explain the evidence or help resolve a conflict;
- the significance of clinical or laboratory findings in the record is not clear, and the ALJ believes an ME may be able to explain the findings and assist the ALJ in assessing their clinical significance;
- the ALJ is determining the claimant's residual functional capacity, *e.g.*, the ALJ may ask the ME to explain or clarify the claimant's functional limitations and abilities as established by the medical evidence of record;
- the ALJ has a question about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time, *e.g.*, the ALJ may ask the ME to explain the nature of an impairment and identify any medically contraindicated activities; or

- the ALJ desires expert medical opinion regarding the onset of an impairment.

HALLEX I-2-5-34 (September 28, 2005). An administrative law judge's determination of whether a medical expert is necessary is inherently a discretionary decision. *Nebra A. Simpson v. Commissioner of Social Security*, 2009 WL 2628355 (6th Cir. August 27, 2009)(unreported) at *8. An administrative law judge abuses her discretion only when the testimony of a medical expert is "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations. *See* 20 C.F.R. § 416.1444." *Haywood v. Sullivan*, 888 F.2d 1463, 1467-68 (5th Cir. 1989).

For the reasons set out above regarding whether plaintiff meets or equals List 1.04A, the administrative law judge should consult a medical expert to assist in evaluating the medical evidence regarding Richardson's cervical impairment.

Social Security Ruling 82-59. The administrative law judge properly considered that in the nearly two years since plaintiff's diagnosis of marked degenerative disc disease, he still has not had surgery or received spinal steroid injections. (R. 17.) The administrative also noted that at times plaintiff is not compliant with his treatment by failing to attend his physical therapy appointments. When considering a plaintiff's allegations of pain, these are proper factors to consider. *See* SSR 96-7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). Moreover, the administrative

law judge did not deny Richardson benefits on the basis that he failed to follow prescribed treatment.

Dr. Season's Opinion. Dr. Season issued the opinion that Richardson was disabled at plaintiff's first appointment with him. At that time, Dr. Season does not qualify as a treating source. To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. A court must determine whether or not an ongoing treatment relationship exists at the time the physician's opinion is rendered. *Kornecky v. Comm'r of Soc. Sec.*, No. 04–2171, 167 Fed. Appx. 496, 506 (6th Cir. Feb.9, 2006) ("[T]he relevant inquiry is ... whether [claimant] had the ongoing relationship with [the physician] at the time he rendered his opinion. [V]isits to [the physician] after his RFC assessment could not retroactively render him a treating physician at the time of the assessment."); *see also Yamin v. Comm'r of Soc. Sec.*, 67 Fed. Appx. 883, 885 (6th Cir.2003) ("These two examinations did not give [the physician] a long term overview of [the claimant's] condition."). This is because "the rationale of the treating physician doctrine simply does not apply" where a physician issues an opinion after a single examination. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994).

Furthermore, Dr. Season's opinion contains no objective findings to support it. The opinion contains no information concerning the nature of his disability, nor does it identify plaintiff's impairment. The form appears to relate to accessing housing services and provides nothing other than a conclusory statement. A treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test

evidence.  *Warner v. Commission-er of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004);

*Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v.*

*Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th

Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975).  20 C.F.R. §§404.1513(b),

(c), (d), 404.1526(b), and 404.1527(a)(1).The Commissioner makes the final decision on the

ultimate issue of disability.  *Warner v. Commissioner of Social Security,* 375 F.3d at 390;

*Walker v. Secretary of Health & Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992);  *Duncan v.*

*Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756

F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

From a review of the record as a whole, I conclude that this case should be

**REMANDED**. On remand, the administrative law judge should have had a medical

advisor assist in evaluating Listing 1.04A.

If any party objects to this Report and Recommendation, that party may, within

fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court,

specifically designating this Report and Recommendation, and the part thereof in question,

as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge

and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474

U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R.  Abel
United States Magistrate Judge